UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QIWU ZHENG,

    Plaintiff,

v.                                              CASE NO: 8:07-cv-1749-T-23MSS

MICHAEL CHERTOFF, et al.,

    Defendants.

_____/

## **ORDER**

Qiwu Zheng ("Zheng") sues (Doc. 1) the Secretary of the Department of Homeland Security, the Director of the United States Customs and Immigration Services ("CIS"), and the Director of the CIS Tampa Field Office (collectively, the "defendants") seeking mandamus and declaratory relief in connection with CIS decisions denying Zheng's application to adjust status under 8 U.S.C. § 1255(i) and his motion to re-open and reconsider the denial. The defendants move (Doc. 12) to dismiss the action for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, and Zheng responds (Doc. 21) in opposition.

## **BACKGROUND**

The complaint includes the following allegations, presumed true for the purpose of this motion.[1] About April 30, 2001, Zheng's employer filed with the Department of Labor

---

[1] See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) ("On a facial attack [under Rule 12(b)(1)], a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion-the court must consider the allegations of the complaint to be true.").

an Application for Alien Employment Certification (Form ETA 750) (the "labor certification application"), which was granted on February 16, 2006.  (Doc. 2 at 3; Doc. 2-5 at 2-6)  To support Zheng's claim that he possessed two years' experience as a Chinese food specialty cook, the application includes an April 18, 2004, certification (Doc. 2-9 at 4) from the general manager of Xilou restaurant ("Xilou") in Fujian, China, that Zheng "worked full time at our restaurant as a Chinese Specialty Cook . . . from June 1998 to December 2000."  On March 15, 2006, Zheng's employer filed with CIS an Immigrant Petition for Alien Worker (Form I-140), which was approved on May 20, 2006. (Doc. 2 at 3; Doc. 2-3 at 7; Doc. 2-6 at 2; Doc. 2-7 at 2-3).  On May 11, 2007, Zheng filed an Application to Register Permanent Residence or Adjust Status (Form I-485) as a skilled worker with an approved Immigrant Petition for Alien Worker.    (Doc. 2 at 4; Doc. 2-7 at 3; Doc. 2-3 at 7)  Zheng filed the Form I-485 pursuant to 8 U.S.C. § 1255(i), which allows an alien who entered the United States without inspection and admission to file an application for adjustment of status if the alien was present in the United States on December 21, 2000, and is the beneficiary of an Application for Alien Employment Certification filed on or before April 30, 2001.

  A February 1, 2007, "Request for Evidence" (Doc. 2-8 at 2) directs Zheng to submit evidence of his presence in the United States on December 21, 2000.  In response, Zheng submitted a letter from his automobile insurer indicating that Zheng held an automobile insurance policy in the United States from April 19, 2000, through October 19, 2002 (Doc. 2 at 4; Doc. 2-10 at 2), and a copy (Doc. 2-10 at 3) of a New York State learners permit issued on March 8, 2000.

An April 11, 2007, interview notice (Doc. 2-8 at 3) directs Zheng to appear at the Tampa CIS Field Office for an interview. Zheng states (Doc. 2-3 at 24) that he cannot recall the CIS interviewer's asking (a) whether Zheng was present in the United States in 1999 or 2000, although Zheng admits the CIS officer obtained a statement "that I was physically in the U.S. since November 1999"; (b) "whether I was physically in China and worked for Xilou Restaurant until December 2000 as indicated in the ETA 750B"; or (c) "whether I possessed 2 year work experience as a Chinese specialty cook at the time of my filing my labor certification application in 2001."[2]

A May 7, 2007, notice informs Zheng of the denial of his application to adjust status. The notice (Doc. 2-4 at 2) states:

> You have failed to prove that you were physically present in the United States on December 21, 2000. You stated on the ETA 750 (Application for Alien Employment Certification) submitted that you worked at the Xilou Restaurant in Fujian China, from June 1998 to December 2000; however, a copy of a New York State learners permit dated March 8, 2000 does not validate or confirm your claim. In addition, the sworn statement taken from you on May 2, 2007, in which you state that you were in New York since Christmas of 1999 also does not corroborate your claim that you have

---

[2] However, the legal memorandum supporting Zheng's motion to re-open and reconsider the denial of his application states that at the interview the CIS officer asked about the apparent contradiction between Zheng's work experience in China from June, 1998, to December, 2000 (as reported in the labor certification application) and Zheng's presence in the United States around Christmas of 1999. See Doc. 2-3 at 9 ("During the interview, the CIS officer found two (2) discrepancies in Mr. Zheng's I-485 application: one is that Mr. Zheng claimed he worked with Xilou Restaurant from June 1998 to December 2000 while a copy of a New York learners permit dated March 8, 2000 indicated that Mr. Zheng was in New York in March 2000 and Mr. Zheng's sworn statement indicated that Mr. Zheng was in New York since Christmas 1999; and the other is that Mr. Zheng failed to submit evidence to prove he possessed at least two years experience as a Chinese Specialty cook if Mr. Zheng was actually in the United States since November or Christmas 1999." Additionally, the legal memorandum complains (Doc. 2 -3 at 12-13) that the interview notice was misleading and the interview unfair because none of the documentary materials mentioned in the notice "referred to or even related to the CIS interview officer's inquiry into the physical presence issue during the interview" and as a result Zheng was under the (mistaken) "impression . . . that he would not be asked the questions of physical presence" and was therefore unprepared to answer them.

- 3 -

> fulfilled your two (2) years of specialized training requirement at Xilou Restaurant in Fujian, China from June 1998 to December 2000. Your I-140 (Immigrant Petition for alien Worker) and ETA 750 (Application for Alien Employment certification) were approved based on this information which you now claim is not correct. You yourself have provided many conflicting statements. You have perjured yourself on many occasions. You are not eligible for adjustment to Permanent Resident status under Section 245(i) of the Immigration and Nationality Act of 1952.
>
> You are not eligible for adjustment of status to Lawful Permanent Residency. Consequently, your application is denied. If you fail to depart from the United States, proceedings will be instituted to enforce your departure.

In short, CIS concluded that Zheng did not qualify for relief under Section 1255(i) because Zheng failed to establish that he was present in the United States on December 21, 2000, and failed to provide truthful information concerning his eligibility for adjustment of status.

Pursuant to CIS regulations,[3] Zheng filed (Doc. 2-3) a "Motion to Reopen/Reconsider" (the "motion to re-open"). In the motion and a supporting affidavit, Zheng acknowledges the apparent contradiction between (a) on the one hand, Zheng's statement that he worked for Xilou from June, 1998, to December, 2000, and Xilou's statement that Zheng "worked full time at our restaurant . . . from June 1998 to December 2000" and (b) on the other hand, Zheng's May 2, 2007, sworn statement that he was present in the United States since Christmas of 1999. However, Zheng explains that, correctly understood, the statements are consistent because, although Zheng arrived in the United States in November, 1999, his employment relationship with Xilou was not formally terminated until December, 2000. (Doc. 2-3 at 24)

---

[3] See 8 C.F.R. 103.5(a).

- 4 -

Zheng admits that the statement in the labor certification application (which was intended to support the claim that Zheng possessed two years' experience as a Chinese food specialty cook) that Zheng "worked" for Xilou from June, 1998, until December, 2000, was liable to misunderstanding.  However, Zheng partly blames the confusion on the attorney who assisted him in preparing the application.  After Zheng told the attorney "that I was with Xilou Restaurant from June 1998 to December 2000," the attorney "did not ask whether . . . I was actually working there from June 1998 to December 2000."  (Doc. 2-3 at 23)  Similarly, Zheng admits that Xilou's statement that Zheng worked "worked full time at our restaurant . . . from June 1998 to December 2000" was "unfortunately worded" but notes that the statement was given "by a Chinese manager . . . for whom English is a second language."  Doc. 2 at 7.  Accordingly, the motion contends that the denial of Zheng's application was unfair because he was not given an adequate opportunity to submit additional evidence on the presence issue or to explain the apparently contradictory statements in his application materials.

Finally, the motion to re-open includes as additional evidence of Zheng's presence in the United States in December, 2000, and his two years' specialized training both (a) a copy of the photograph page of Zheng's Chinese passport issued in New York on November 10, 1999, and (b) a supplemental employment certification letter (not included in the original labor certification application) stating that Zheng worked as a Chinese food cook for a second restaurant in Fujian, China, from June 1997, to May, 1998.  Relying on the record, including his explanation of the apparent contradiction in his application materials, Zheng requests reversal of the denial of his

application.  An August 27, 2007, notice informs Zheng (without further explanation) of the denial of his motion.

Zheng's September 26, 2007, complaint alleges that the defendants failed to consider the evidence presented in support of Zheng's application and claims that this failure violated his Fifth Amendment right to due process and constituted an abuse of discretion.  The complaint asserts jurisdiction under 28 U.S.C. § 1331 (the general federal question statute), 28 U.S.C. § 1361 (the mandamus statute), 5 U.S.C. § 702 (the Administrative Procedure Act), 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 8 U.S.C. § 1329 (the Immigration and Nationality Act).[4]  The complaint seeks (1) a declaration that the defendants violated their duty to consider all pertinent evidence in adjudicating both Zheng's application to adjust status and his motion to re-open and (2) an order compelling the defendants to fulfill that duty.

## DISCUSSION

Adjustment of status is the method by which aliens who are already present in the United States may become lawful permanent residents.  The Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1101, et seq., (the "INA") allows the

---

[4] Zheng's assertion of jurisdiction under 8 U.S.C. § 1329 and 28 U.S.C. § 2201 requires no discussion.  Section 1329 applies only to suits brought by the United States.  See 8 U.S.C. § 1329 ("Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers."); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, Title III-F, § 381(a)(2), 110 Stat. 3009-650; Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 477 n.4 (1999) (noting that Section 1329 "was . . . . amended by IIRIRA to make clear that it applies only to actions brought by the United States.").  The Declaratory Judgment Act "does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." Borden v. Katzman, 881 F.2d 1035, 1037 (11th Cir. 1989) (citing Skelly Oil Co. v. Phillips Co., 339 U.S. 667 (1950)).

Attorney General[5] in his discretion to adjust the status of "an alien who was inspected and admitted or paroled into the United States . . . to that of an alien lawfully admitted for permanent residence" if (1) the alien applies for the adjustment, (2) the alien is eligible to receive an immigrant visa and admissible to the United States for permanent residence, and (3) an immigrant visa is available to the alien upon filing the application. 8 U.S.C. § 1255(a); see also Merchant v. U.S. Att'y. Gen., 461 F.3d 1375, 1377-78 (11th Cir. 2006). "Since § 1255 allows an alien to apply for permanent residence status in the United States rather than requiring him to return to his own country to apply for such status, its provision for adjustment of status is considered to be extraordinary relief." Howell v. I.N.S., 72 F.3d 288, 291 (2d Cir. 1995) (internal quotation marks omitted); see also Elkins v. Moreno, 435 U.S. 647, 667 (1978) ("[A]djustment of status is a matter of grace, not right.").

Generally, adjustment of status is available only to an alien who entered the United States lawfully and maintained lawful non-immigrant status. See 8 U.S.C. §§ 1255(a) and (c); cf. 8 U.S.C. § 1255(k). However, Section 1255(i) provides an exception by allowing an alien who entered the United States without inspection or fell out of lawful non-immigrant status to apply for adjustment of status on payment of a $1,000 fine if (1) the alien is present in the United States at the time the alien applies for adjustment of status; (3) the alien is the beneficiary of an application for labor

---

[5] Although 8 U.S.C. § 1255(a) refers to the Attorney General as the decision-maker, the authority to adjudicate adjustment of status applications has been transferred to the Secretary of the Department of Homeland Security and his delegate at CIS. See 8 U.S.C. § 1103(a); 6 U.S.C. §§ 271(b), 557; 8 C.F.R. § 245.2; Torres v. Chertoff, No. 1:07-cv-1649, 2007 WL 4261742, *3 n.4 (N.D. Ga. Nov. 30, 2007)  For the sake of simplicity, this order refers to the Attorney General as the officer charged with adjudicating Zheng's adjustment of status application.

certification that was properly filed on or before April 30, 2001, and approvable when filed; and (3) the alien was present in the United States on December 21, 2000.[6] If these conditions are met, the Attorney General in his discretion[7] "may adjust the status of the alien to that of an alien lawfully admitted for permanent residence" if the alien is eligible to receive an immigrant visa and an immigrant visa number is immediately available to the alien at the time the application is filed.[8]

CIS regulations provide that, if an application for adjustment of status is denied, the applicant must be "notified of . . . the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i). The applicant may move within thirty days for reconsideration of the decision or re-opening of the proceeding.[9] "No [administrative] appeal lies from the denial of an application [for adjustment of status] . . . but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal proceedings]." 8 C.F.R. § 245.2(a)(5)(ii).[10] If CIS commences removal proceedings against an alien, adjustment of status under 8 U.S.C. § 1255 is one of the immigration benefits that the alien may request from an immigration judge. 8 C.F.R. §§ 1240.1(a)(1) &

---

[6] See 8 U.S.C. § 1255(i)(1)(A)-(C); 8 C.F.R. § 245.10(a); Merchant v. U.S. Att'y. Gen., 461 F.3d 1375, 1377-78 and n.4 (11th Cir. 2006) The alien may submit a variety of documentary materials to prove presence in the United States on December 21, 2000. However, determinations as to the weight to be given a document or item of evidence rests "solely within the discretion of [CIS]." 8 C.F.R. § 245.10(n)(5)(ii).

[7] See Usmani v. U.S. Att'y. Gen., 483 F.3d 1147, 1150 (11th Cir. 2007) (the Attorney General has discretion to deny a petition for adjustment of status under Section 1255(i) even to an applicant who is statutorily eligible for adjustment of status).

[8] 8 U.S.C. § 1255(i)(2); also Merchant, 461 F.3d at 1377-78 and n.4.

[9] 8 C.F.R. 103.5(a)(1)(i).

[10] See also 8 C.F.R. § 1245.2(a)(5)(ii).

1240.11(a)(1).[11] An adverse decision by the immigration judge is appealable as of right to the Board of Immigration Appeals (the "BIA"), 8 C.F.R. § 1003.1(b), and an applicant may raise constitutional and legal challenges to an adverse decision of the BIA in a petition for review in the appropriate United States Court of Appeals.[12]

The INA precludes judicial review of certain decisions committed to the discretion of CIS–including denials of adjustment of status under Section 1255:

> Notwithstanding any other provision of law . . . including sections . . . 1361 and 1651 [of title 28] and except as provided in subparagraph (D) . . . no court shall have jurisdiction to review–
>
> (i) any judgment regarding the granting of relief under section . . . 1255 of this title [adjustment of status], or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.[13]

---

[11] See also Cardoso v. Reno, 216 F.3d 512, 518 (5th Cir. 2000) (dismissing a direct appeal from denial of an alien's request for adjustment of status, noting that she had to first exhaust her administrative remedies by renewing her application upon the commencement of removal proceedings); Randall v. Meese, 854 F.2d 472, 474-75 (D.C. Cir. 1988) ("Should the alien fail to gain adjustment [in his initial application], he is entitled to a de novo review of his application in the context of deportation proceedings."); McBrearty v. Perryman, 212 F.3d 985, 987 (7th Cir. 2000) (concluding that plaintiffs who filed suit in district court seeking review of denial of adjustment of status failed to exhaust their administrative remedies: "The suit was premature, since [the plaintiffs] could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal . . . proceedings against them.").

[12] See 8 U.S.C. § 1252(a)(1); cf. Najjar v. Ashcroft, 257 F.3d 1262, 1298-99 (11th Cir. 2001) (construing predecessor to 8 U.S.C. § 1252);

[13] 8 U.S.C. § 1252(a)(2)(B). Since the enactment of the REAL ID Act, this jurisdiction-stripping provision applies "regardless of whether the [administrative] judgment, decision, or action is made in removal proceedings." REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 101(f)(2), 119 Stat. 302, 305 (2005) (codified as amended at 8 U.S.C. § 1252(a)(2)(B)). This amendment resolved a disagreement among circuit courts as to whether Section 1252(a)(2)(B) applied outside the context of removal proceedings. See ANA Int'l v. Way, 393 F.3d 886, 891 n.3 (9th Cir. 2004). Courts disagree as to how broadly Section 1252(a)(2)(B)(ii) should be read.

(continued...)

Although the discretionary decision to deny adjustment of status is unreviewable,[14] Section 1252(a)(2)(B) does not preclude certain constitutional and legal challenges to decisions pertaining to the denial of an application to adjust status. Section 106 of the REAL ID Act amended the INA to provide a limited exception to 1252(a)(2)(B)(i)'s jurisdictional bar. Section 1252(a)(2)(D) now provides:

> Nothing in [1252(a)(2)(B)] or (C) or in any other provision of [the INA] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Although this provision restores federal jurisdiction over constitutional and legal challenges to decisions denying discretionary relief under Section 1255(i), the provision vests the jurisdiction in the courts of appeals–not in the district courts.[15]

---

(...continued)
Compare, e.g., Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006), with Yong Tang v. Chertoff, 493 F. Supp. 2d 148, 151 (D. Mass. 2007).

[14] See Brown v. U.S. Att'y Gen., 187 Fed. Appx. 934, 936, 2006 WL 1785291, 2 n.2 (11th Cir. 2006) ("To the extent [the plaintiff] requests that we review the IJ's and BIA's factual and discretionary determinations denying him adjustment of status, we lack jurisdiction to review such discretionary determinations.") (citing 8 U.S.C. § 1252(a)(2)(B).); see also Jarad v. Gonzales, 461 F.3d 867, 869 (7th Cir. 2006); Hailemichael v. Gonzales, 454 F.3d 878, 886 (8th Cir. 2006).

[15] See Sillah v. Lara, No. 07-15824, 2008 WL 1823431, 2 (11th Cir. Apr. 24, 2008) (unpublished) ("[O]nly the courts of appeal retain jurisdiction to consider constitutional and legal challenges to decisions pertaining to the denial of discretionary relief" under 1255(i)); Lee v. U.S. Citizenship and Immigration Servs., No. 07-141, 2008 WL 1805749, 3 (D. Md. Apr. 8, 2008) (noting that "[8 U.S.C. §§ 1252(a)(2)(B) and1252(a)(2)(D)] read together, have been widely interpreted to preclude judicial review of a discretionary denial of status adjustment and to require any constitutional or legal challenges to be brought on appeal directly from the Board of Immigration Appeals ('BIA') to a federal court of appeals."); cf. Rodas v. Chertoff, 399 F. Supp. 2d 697, 706 (E.D. Va. 2005) (holding that under 8 U.S.C. § 1252(a)(2)(D), judicial review of due process claims stemming from withdrawal of temporary employment authorization "is limited to the courts of appeal; district courts have no jurisdiction to review such claims."); Bah v. Cangemi, 489 F. Supp. 2d 905, 913 (D. Minn. 2007) (noting that under 1252(a)(2)(B)(ii) generally precludes review the Attorney General's discretionary decision to deny an adjustment to temporary protected status under 8 U.S.C. 1254a(a)(1)(A), "and the exception--found in § 1252(a)(2)(D)--cannot help [the plaintiff] because . . . the exception applies

(continued...)

- 10 -

Zheng attempts to evade Section 1252's bar by characterizing his claims as a challenge not to the CIS decision to deny his application but rather to CIS's procedure in adjudicating his application–specifically, CIS's failure to consider all pertinent evidence submitted in support of his application and motion to re-open.  Accordingly, Zheng states that "[t]his action directly challenges only Defendants' misapprehensions and violations of due process in adjudication and related practices, and challenges the denial itself only as consequent and ancillary to the challenged adjudication practices." (Doc. 1 § 2)  However, although presented as a mandamus action to compel agency action unlawfully withheld ("consideration of all pertinent evidence"), in substance the complaint seeks review of the CIS decision denying Zheng's application for adjustment of status.[16]  To the extent the complaint seeks review of that decision (or of any discretionary or factual determination underlying the decision[17]), review is barred by Section 1252(a)(2)(B).  Any genuine constitutional or legal challenge by Zheng to the denial of his application for adjustment of status (including any genuine[18] claim based

---

(...continued)
only to the courts of appeals, not to the district courts."). But see Pinho v. Gonzales, 432 F.3d 193, 202 (3d Cir. 2005) (concluding that district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 704 to review a denial of adjustment of status based on a determination that the alien was statutorily ineligible to adjust status).

[16] Cf. Sillah v. Lara, No. 1:07-cv-2138, 2007 WL 3478155, 3 (N.D. Ga. Nov. 14, 2007) ("Although styling his challenge as a petition for a writ of mandamus, Plaintiff requests this Court to review the legal determination made by the USCIS on his application to adjust status."), aff'd, 2008 WL 1823431 (11th Cir. Apr. 24, 2008).

[17] See Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005); Martinez v. U.S. Att'y. Gen., 446 F.3d 1219, 1222 (11th Cir. 2006) Chacon-Botero v. U.S. Att'y. Gen., 427 F.3d 954, 957 (11th Cir. 2005).

[18] See Arias v. U.S. Att'y. General, 482 F.3d 1281, 1284 (11th Cir. 2007) ("While we 'retain jurisdiction to review due process challenges under the constitutional claims language of the REAL ID Act, a petitioner must allege at least a colorable constitutional violation.'") (quoting Saloum v. CIS,
(continued...)

on a denial of due process) is reviewable only "upon a petition for review filed with an appropriate court of appeals . . . .", 8 U.S.C. § 1252(a)(2)(D).

In short, Zheng may not evade the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B) by re-characterizing a challenge to the denial of his application and motion to re-open as an action under the APA to compel CIS to consider the pertinent evidence. Because Section 1252(a)(2)(B)(i) bars review of denials of adjustment of status in federal district court, neither 28 U.S.C. § 1361 (the mandamus statute) nor 5 U.S.C. § 702 (the Administrative Procedure Act)[19] together with 28 U.S.C. § 1331 (the federal question statute)[20] provides a basis for jurisdiction of Zheng's claims.[21] If this conclusion places Zheng in an "uncomfortable state of limbo,"[22] with no opportunity to challenge the CIS decision until the government commences removal proceedings against him, the statute apparently allows no other.

---

[18](...continued)
437 F.3d 238, 243 (2d Cir. 2006)). "'A petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb.'" Arias, 482 F.3d at 1284 (quoting Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001)).

[19] See also 5 U.S.C. § 701(a)(1) (providing that the APA applies "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.").

[20] The APA does not independently confer subject matter jurisdiction. See Califano v. Sanders, 430 U.S. 99, 106-107 (1977).

[21] This conclusion obviates the need to discuss the defendants' perfunctory argument that subject matter jurisdiction is absent because the plaintiff has failed to exhaust his administrative remedies.

[22] Kim v. Gonzales, No. 05-485, 2006 WL 1892426, 1 (D. Md. June 19, 2006); cf. Pinho, 432 F.3d at 202-203.

## CONCLUSION

Accordingly, the defendants' motion to dismiss (Doc. 12) is **GRANTED** to the extent that the plaintiff's petition (Doc. 1) is **DISMISSED** for lack of subject matter jurisdiction.  The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on May 28, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE